USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 2/20/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LEON M. PERRY, JR.,

                            Plaintiff,

        -against-

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                            Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

06 Civ. 8192 (KMK) (GAY)

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

Plaintiff Leon Perry commenced this action pursuant to 42 U.S.C. § 405(g), challenging the decision by the Commissioner of Social Security ("the Commissioner") to deny plaintiff's application for disability insurance benefits on the ground that he was not disabled on or before December 31, 1989. Presently before this Court are the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons that follow, I respectfully recommend that the Commissioner's motion should be granted.

## I. BACKGROUND

Plaintiff was born in December 1947 (Tr. 408).[1] He has a high school education. Plaintiff was in the Armed Forces and served a tour in Vietnam (Id.). He served as gunner on a medvac chopper (Tr. 420). Plaintiff was honorably discharged in 1972 after being classified as temporarily disabled (Tr. 417). From 1985 to 1988, he worked as a

---

[1] Numbers in parentheses refer to pages from the administrative transcript, filed with defendant's motion in accordance with 42 U.S.C. § 405(g).

truck driver (Tr. 409). In November of 1988, plaintiff was involved in a motor vehicle accident and has not been employed since (Tr. 409).

On June 18, 1985, plaintiff sought treatment at a Veterans Administration Medical Center ("VAMC") for complaints of chest pain (Tr. 284-338). Plaintiff reported having chest pains on and off for the previous two and half months (Tr. 284). An electrocardiogram ("EKG") was normal; however, plaintiff was admitted to further determine the cause of his chest pains (Tr. 284-85). The examining physician, Dr. Murphy, indicated that plaintiff's neuropsychiatric systems were not contributory to his condition (Tr. 288). Upon admission, Dr. Murphy reported that plaintiff's lungs had normal breath sounds bilaterally, without rales, rhonchi, or wheezing (Tr. 289). Plaintiff's neurological examination and laboratory tests were normal (Tr. 290). Dr. Murphy's diagnostic impression was chest pain and a history of hypertension (Tr. 285, 290). Plaintiff was prescribed some medication and advised to return to work and to resume his activities (Tr. 285, 296).

On December 8, 1988, three weeks after his automobile accident, plaintiff sought treatment for chest pain in the emergency room of Nyack Hospital (Tr. 394-95). During this visit, plaintiff related that he had fractured his left thumb during the accident (Id.). He also reported that he experienced sharp intermittent chest pains lasting a split second with associated nausea, sweating, and dizziness (Id.). The examining physician, Dr. Marcus, observed that plaintiff was comfortable and in no distress (Id.). An examination of the plaintiff's lungs revealed clear lungs. An examination of plaintiff's heart revealed normal sounds, and no murmurs, rubs, or gallops (Id.). Plaintiff's EKG revealed delayed R wave progression in the right precordial leads, but was otherwise

2

normal (Id.). Dr. Marcus noted his impression to include "atypical momentary sharp jabbing chest pain" (Id.). However, he doubted "strongly" that it represented ischemic heart disease and opined that it was "probably musculoskeletal possibly secondary to chest injury secondary to motor vehicle accident" (Tr. 395).

On February 2, 1989, Dr. Semble completed a form for plaintiff's worker's compensation claim (Tr. 51). Dr. Semble noted, among other things, that plaintiff complained of mid back pain, numbness of the "dorso-lateral aspect" of his left foot, and left thumb pain (Id.). Dr. Semble advised plaintiff to continue with physical therapy (Id.). Dr. Semble checked a box on the workers compensation form indicating that plaintiff had a total disability (Id.).

Plaintiff alleges that he first began receiving treatment for his Post Traumatic Stress Disorder ("PTSD") in November 1995. In a letter addressed to the Veteran Administration, Pat Boffardi, a clinical social worker, indicated that plaintiff displayed an impairment of thought processes, persistent delusions, depression, fatigue, and was at times, disoriented, and would occasionally act in an aggressive manner (Tr. 101). Mr. Boffardi diagnosed plaintiff as having chronic PTSD, major depressive disorder, borderline personality disorder, and trauma of combat in Vietnam (Id.).

In 1999, plaintiff was examined by a VAMC psychiatrist, Dr. Richard Silverman approximately every two to three months for a total of five visits (Tr. 113-15, 121). Plaintiff reported symptoms of irritability, but no violent outbursts or suicidal ideation (Tr. 114-15). In December of 1999, plaintiff was examined by Dr. Viljayalakshmi, who indicated that he was a "well adult with PTSD" (Tr. 124-27). In March 2000, plaintiff reported that his mood was generally good to Dr. Silverman during an examination (Tr.

3

134). His physical examination revealed no limitations in movement of his extremities, neck, shoulders, or hips (Tr. 134-35). Plaintiff's next consultation with Dr. Silverman was in June 2000, where he reported that his mood was much improved and that he was more active (Tr. 141).

In March of 2001, plaintiff again saw Dr. Silverman. During this visit, plaintiff reported that he stopped taking his medications for the previous five months (Tr. 145). He reported an increase in his symptoms including, depression, sleep disturbance, and panic attacks (Id.). In May 2001, plaintiff reported to Dr. Silverman that he did not have any improvements in his condition while on his current medication (150). Dr. Silverman increased the dosage (Id.). Plaintiff continued to receive treatment at the VAMC for various conditions including back and neck pain, right arm tremor, and chronic obstructive pulmonary disease ("COPD") (Tr. 170, 175-83, 184-85, 190-99, 201-07, 210-20, 222-24, 226-30, 233-38).

In a January 6, 2006 note, Dr. Silverman indicated that plaintiff had been receiving treatments at the VAMC since 1999 for PTSD related to his services in Vietnam (Tr. 392). He noted that plaintiff experienced panic attacks secondary to his PTSD (Id.). He also noted that plaintiff advised him that he received treatments for angina and shortness of breath for a couple of years prior to January of 1988 (Id.). Dr. Silverman opined that it was likely that plaintiff suffered from PTSD symptoms and panic attacks prior to the evaluation in the clinic(Id.). However, he noted that he was "unable to give a definite diagnosis, since [he] did not know the patient prior to 1999" (Id.).

On August 26, 2003, plaintiff applied for disability benefits (Tr. 45-47). Plaintiff alleged disability as of November 1988, due to herniated disc of the cervical spine,

4

arthritis, coronary artery disease, PTSD, and COPD (Tr. 28, 58). His application was denied on initial administrative review (Tr. 25-28). On February 7, 2005, pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") (Tr. 29). Plaintiff subsequently withdrew the request for a hearing (Tr. 431-32). On February 15, 2005, the ALJ issued an order dismissing the hearing request (Tr. 41-44).

On March 24, 2005, plaintiff requested that the Appeals Council review his claim (Tr. 353). The Appeals Council granted plaintiff's request for review, vacated the ALJ's order of dismissal, and remanded for further proceedings (Tr. 354-56). On January 9, 2006, a second hearing was held (Tr. 405-428). On January 20, 2006, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act ("SSA") and, therefore, was not entitled to disability benefits (Tr. 14-21). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 28, 2006 (Tr. 5-7).

## II. STANDARD OF REVIEW

The Commissioner's factual findings are conclusive if they are supported by substantial evidence. See 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quotation and citation omitted). The reviewing court "may only set aside a determination which is based upon

legal error or not supported by substantial evidence." Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998) (quotation and citation omitted).

### III. STATUTORY DISABILITY

The SSA defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). In addition, a person is eligible for disability benefits under the SSA only if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Second Circuit has adopted a five-step analysis for evaluating disability claims under the SSA:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the

> burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). In determining whether there is other work which the claimant could perform, "the Commissioner must consider four factors: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age and work experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quotation and citation omitted).

### IV. ALJ'S DETERMINATION

As a threshold matter, the ALJ determined that based upon plaintiff's earnings history, he was fully insured for purposes of disability benefits through December 31, 1989. The ALJ, accordingly, defined the issue as whether plaintiff was disabled within the meaning of the SSA at any time from November 16, 1988 (his alleged onset date) through December 31, 1989 (his date of last insurability) (Tr. 17).

The ALJ applied the five-step procedure and concluded that plaintiff was not disabled within the meaning of the Act during the relevant time frame. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 16, 1988 (Tr. 18-19). At step two, the ALJ determined that there is a lack of medical evidence to support a conclusion that plaintiff had a severe impairment that was disabling from November 16, 1988 until December 31, 1989 (Tr. 19). The ALJ concluded, therefore, that plaintiff was not under a "disability" as defined in the SSA at any time through the date of his decision (Tr. 19-21).

7

## V. ANALYSIS

### A. Duty to Develop the Record

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he failed to adequately develop the record. Plaintiff specifically asserts that the ALJ failed to re-contact plaintiff's treating physician "in light of the remote date of last insurability and the retrospective opinion of the plaintiff's treating physician."

Generally, the ALJ has an affirmative duty to develop the administrative record. See Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999). If there are deficiencies in the record, the ALJ has an affirmative duty to develop the medical record even if the claimant is represented by counsel. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). On the other hand, where the ALJ possesses "a complete medical history," he is under no duty to seek additional information before rejecting a claim. See id. n.5.

Plaintiff alleges, in essence, that the record reflects that he suffered chest pains and shortness of breath prior to his date of last insurability, which he reported to his treating sources in 1995 and 1999; that he testified about his use of alcohol. He argues therefore, that the ALJ had a duty to contact his treating sources, Mr. Boffardi and Dr. Silverman, to obtain additional information regarding plaintiff's conditions prior to his date of last insurability. Plaintiff avers that this is especially true in light of the established prevalence of substance abuse disorder in PTSD patients.

Contrary to plaintiff's assertions, there are no gaps or deficiencies in the record which would trigger the ALJ's duty to seek additional information. Consistent with the regulations, the ALJ obtained the full record from the treating sources identified by plaintiff for at least the twelve-month period prior to his application. See 20 C.F.R. §§

404.1512(d)(2); 416.912(d)(2). Plaintiff represented that he was seen by various physicians including Dr. Silverman and social worker Mr. Boffardi at different times starting from 1995. The record contains copies of Dr. Silverman's notes, notes and reports by plaintiff's other physicians, and the letter by Mr. Boffardi addressed to the Veterans Administration (Tr. 371-404). Moreover, as set forth below, neither Dr. Silverman nor Mr. Boffardi gave a definite diagnosis as to plaintiff's condition prior to 1989. Accordingly, I conclude that plaintiff's contention regarding the ALJ's alleged failure to adequately develop the record is without merit.

B. <u>Substantial Evidence Supports the ALJ's Conclusion</u>

Plaintiff avers that the Commissioner's final decision is not supported by substantial evidence. He argues that the Commissioner failed to properly evaluate the objective medical evidence in support of plaintiff's subjective complaint of PTSD prior to his last day of insurability. Specifically, plaintiff avers that he presented to the Commissioner medical treatments for symptoms that occurred prior to his date of last insurability; that he was found to have a total disability pursuant to a worker's compensation attending doctor's report of November 16, 1988; that he was placed on the temporary disability retired list for bronchial asthma found to be service related; and that he presented testimony regarding his symptomology prior to his date of last insurability. Thus, plaintiff argues that the Commissioner failed to evaluate said medical evidence in support of his symptomology. No medical evidence, however, supports the conditions that plaintiff alleged during the relevant period.

Plaintiff alleges that when he sought medical treatment for his PTSD, he displayed various symptoms including displaced gross impairment of thought processes

9

and communication, persistent delusions, and feeling of fatigue. Plaintiff also alleges that he used alcohol daily and experienced "deep depression, and a lot of anxiety attacks." He states that he had these symptoms prior to 1989. Despite plaintiff's subjective testimony that these symptoms began prior to 1989, there are no records of treatment. Plaintiff began receiving treatment for PTSD in 1995, six years after the date of last insurability. Two records exist of plaintiff receiving medical treatment prior to 1989 (Tr. 284-85, 287-90, 294-96, 394-95). However, neither of these records mentions or references any psychiatric symptoms listed by plaintiff. In fact, Dr. Murphy's treatment report of 1985 indicated that plaintiff's neuropsychiatric systems were not contributory to his condition (Tr. 288). Thus, to the extent that plaintiff is arguing that his account of symptomology should serve to prove the severity of his PTSD prior to 1989, subjective complaints alone are insufficient to serve as a basis for a finding of disability. See 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 404.1529 (b); Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983); Centano v. Apfel, 73 F. Supp.2d 333, 338 (S.D.N.Y. 1999). Plaintiff must demonstrate by medical signs or findings the existence of a medical condition that could reasonably be expected to produce the symptoms alleged. 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 404.1529 (b); Gallagher, 697 F.2d at 84; Centano, 73 F. Supp.2d at 338. Plaintiff has not demonstrated any evidence of the existence of or treatment for PTSD prior to December 31, 1989. The earliest report of symptoms relating to PTSD in the record was in 1995 as contained in the 1998 letter from Mr. Boffardi. Therefore, I respectfully conclude that substantial evidence supports the ALJ's decision that plaintiff was not under a disability during the period of November 16, 1988 to December 31, 1989.

Plaintiff also argues that the Commissioner's final decision is not supported by substantial evidence in that the Commissioner failed to properly evaluate and/or give proper weight to the treating physician's retrospective opinion. Plaintiff asserts that the Commissioner failed to consider what he characterizes as an opinion of disability from Dr. Silverman. Dr. Silverman's note stated that it was likely that plaintiff's somatic symptoms prior to his evaluation in the clinic were due to anxiety disorder (Tr. 392). Plaintiff also avers that the Commissioner failed to give weight to the statement of Mr. Boffardi addressing the issue of the onset of plaintiff's disability. Contrary to plaintiff's assertions, the Dr. Silverman and Boffardi notes do not establish that plaintiff was under a disability during the period of November 16, 1988 to December 31, 1989.

The Second Circuit has long recognized that the treating physician's rule; that "'a treating source's opinion on the issue(s) of the nature and severity of [a plaintiff's] impairment(s)' will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record;'" applies equally to retrospective opinions given by treating physicians. See Byam v. Barnhart, 336 F.3d 172, 183 (2d Cir. 2003); Rivera v. Sullivan, 923 F.2d 964, 968-69 (2d Cir. 1991); Lacava v. Astrue, No. 11–CV–7727, 2012 WL 6621731, at *13, (S.D.N.Y. Nov. 27, 2012) ("Although retrospective diagnoses do not command the same deference as contemporaneous diagnoses, they are afforded substantial weight unless contradicted by other medical evidence or by "overwhelmingly compelling" non-medical evidence."); Gercke v. Chater, 907 F. Supp. 51, 52 (E.D.N.Y. 1995) (holding that, "[e]ven if the treating physician's opinion is retrospective, the opinion is binding on the ALJ unless

11

contradicted by other medical evidence or overwhelmingly compelling non-medical evidence"). Retrospective opinions are "those from a treating physician that relate to a time period in the past, including periods when the physician was not the treating source." Lacava v. Astrue, 2012 WL 6621731, at *13.

Here, plaintiff alleges that Dr. Silverman indicated that plaintiff advised him that he had treatment for angina and shortness of breath for a number of years (Tr. 392). Additionally, Dr. Silverman stated that it was likely that plaintiff's somatic symptoms prior to his evaluation in the clinic were due to anxiety disorder (Tr. 392). However, Dr. Silverman's note was not an opinion of disability relating to the relevant period in the past. Indeed, Dr. Silverman's note made no mention of the relevant time period; and made no diagnosis of plaintiff's condition prior to December 1989. In fact, Dr. Silverman noted that he was "unable to give a definite diagnosis, since [he] did not know the patient prior to 1999" (Tr. 392).

Further, to the extent that plaintiff is relying on the portion of the note stating that it was likely that plaintiff suffered from PTSD symptoms and panic attacks prior to the evaluation in the clinic to establish a retrospective opinion, said statement is not evidence of a disability prior to December, 1989. Dr. Silverman began seeing plaintiff in 1999, ten years after the 1989 date of last insurability. Moreover, Dr. Silverman's statement that he is "unable to give a definite diagnosis" serves to establish that he did not make any retrospective diagnosis of plaintiff. Therefore, I conclude that the ALJ did not err by finding that there were no opinions of disability relating to the relevant period.

Similarly, Mr. Boffardi's note was not an opinion of disability relating to the relevant period. Mr. Boffardi, a clinical social worker, was not a medical source whose

12

opinion would be entitled to controlling or extra weight. See 20 C.F.R. § 404.1513 (a). In any event, this note did not render an opinion that plaintiff was disabled from working during the relevant period.

Mr. Boffardi's statement was made regarding a disability program other than Social Security. Generally, a determination "by any ... agency about whether you are disabled ... is based on its rules and is not [the Commissioner's] decision about whether you are disabled ... Therefore, a determination made by another agency that you are disabled ... is not binding on [the Commissioner]." 20 C.F.R. §§ 404.1504, 416.904; see also Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y. 1994) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary.")).

The Second Circuit has stated that disability decisions made by other governmental agencies are entitled to some weight. See Hankerson v. Harris, 636 F.2d 893, 896-97 (2d Cir. 1980) (citing Cutler v. Weinberger, 516 F.2d 1282, 1286 (2d Cir. 1975) ("While the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered.")); Stieberger v. Sullivan, 738 F. Supp. 716, 744 (S.D.N.Y. 1990).

Here, Mr. Boffardi noted that plaintiff had been a patient of the program since November of 1995 (Tr. 101). He also indicated that plaintiff displayed an impairment of

thought processes, persistent delusions, depression, fatigue, and was at times, disoriented, and would occasionally act in an aggressive manner (Id.). Mr. Boffardi diagnosed plaintiff as having chronic PTSD, major depressive disorder, borderline personality disorder, and trauma of combat in Vietnam (Id.). However, Mr. Boffardi makes no mention of plaintiff's disability status during the relevant time period. He does not assert that plaintiff suffered from these conditions prior to 1989. In fact, the only reference made by Mr. Boffardi to a period prior to 1995 was his statement that plaintiff's PTSD was directly related to the trauma he was exposed to during his tour of duty in Vietnam (Id.). Thus, while disability decisions made by other governmental agencies are entitled to some weight, Mr. Boffardi did not give any opinion regarding plaintiff's disability status during the relevant time. Accordingly, I conclude that plaintiff's argument that the ALJ failed to evaluate Mr. Boffardi's note has no merit.

## VI. CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend, that plaintiff's motion for judgment on the pleadings should be denied and the **Commissioner's cross-motion should be granted**.

## VII. NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended and Rule 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The

Honorable Kenneth M. Karas at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Kenneth M. Karas and not to the undersigned.

Dated: February 20, 2013
White Plains, New York

Respectfully Submitted,

_____
GEORGE A. YANTHIS, U.S.M.J.