UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEON M. PERRY, JR.,

                      Plaintiff,

   -v-

MICHAEL J. ASTRUE, Commissioner of Social Security,

                      Defendant.

Case No. 06-CV-8192 (KMK) (GAY)

ORDER ADOPTING REPORT AND RECOMMENDATION

KENNETH M. KARAS, District Judge:

       Leon M. Perry, Jr. ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"), finding that he was not entitled to disability insurance benefits under the Social Security Act ("SSA"). The case was referred to Magistrate Judge George A. Yanthis pursuant to 28 U.S.C. § 636(b). (Dkt. No. 3.) On February 20, 2013, Magistrate Judge Yanthis issued a Report and Recommendation ("R&R") recommending that the Commissioner's determination be affirmed and judgment entered for Defendant. (Dkt. No. 20.) For the reasons below, the Court adopts the R&R in its entirety and enters judgment for Defendant.

I. Standard of Review

A. Review of the R&R

       Plaintiff, who is represented by counsel, did not file any objections to the R&R within the specified time. *See* 28 U.S.C. § 636(b)(1) (specifying the time to object to a report and recommendation); *Pressley v. Astrue*, No. 12-CV-8461, 2013 WL 3974094, at *1–2 (S.D.N.Y. Aug. 2, 2013) (applying § 636 to review of a report and recommendation in a social security

case). However, because the R&R took a substantial period of time to prepare, the Court called Plaintiff's counsel several months after the R&R was released to ensure that he had in fact received the R&R. Counsel responded that he had not seen the R&R, and counsel later wrote to the Court requesting an extension of time to file any objections. (Dkt. No. 21.) On August 16, 2013, the Court granted the request, and the Court gave Plaintiff until September 6, 2013 to file any objections. (*Id.*) The Court, however, has not received any submission from Plaintiff since that time. Thus, because "neither party objected to [the] R&R, the Court reviews the recommendation for clear error." *Pressley*, 2013 WL 3974094, at *2.

        B. Federal Court Review of Determinations of the Commissioner

Plaintiff seeks review of a final determination of the Commissioner denying Plaintiff's claim for disability insurance benefits. (Pl.'s Mem. 1; AR 17–21.)[1] "A claimant is disabled and entitled to disability insurance benefits if [he or] she is unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cichocki v. Astrue*, — F.3d —, No. 12-3343, 2013 WL 4749644, at *3 (2d Cir. Sept. 5, 2013) (quoting 42 U.S.C. § 423(d)(1)(A)). A federal court reviewing a determination of the Social Security Administration "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Id.* (internal quotation marks omitted). "'The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of

---

[1] "AR" refers to the Administrative Record in the case.

proving his or her case at steps one through four of the sequential five-step framework established in the SSA regulations.'" *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

## II. Discussion

The ALJ determined that Plaintiff "does not have any impairment that would be considered severe in nature prior to his date last insured of December 31, 1989," and accordingly determined that he was "not entitled to a period of disability or Disability Insurance Benefits under . . . the Social Security Act." (AR 21.) Magistrate Judge Yanthis concluded that this determination was supported by substantial evidence. (R&R 7–15.) This Court agrees.

It is undisputed that Plaintiff's last date of insurability was December 31, 1989; thus, the question is whether Plaintiff "was disabled within the meaning of the SSA at any time from November 16, 1998 (his alleged onset date) through December 31, 1989." (R&R 7; *see also* AR 17; Pl's Mem. 3.) After a hearing where only Plaintiff testified, the ALJ determined that Plaintiff was not disabled before December 31, 1989. (AR 17–21.) The Appeals Council denied Plaintiff's request for review. (AR 5.)

In this Court, Plaintiff first contends that "[t]he Commissioner failed to properly evaluate the objective medical evidence in support of plaintiff's subjective complaint of Post Traumatic Stress Disorder ["PTSD"] prior to the plaintiff's last day of insurability." (Pl.'s Mem. 6.) Magistrate Judge Yanthis properly rejected this contention. (R&R 9–14.) In fact, Plaintiff concedes that there is no objective medical evidence from a treating physician before 1989 that states clearly that Plaintiff suffered from PTSD that could be considered severe enough to be a "disability" under the meaning of the SSA. (Pl's. Mem. 8.) Instead, Plaintiff relies on his own testimony from the ALJ hearing and on what he characterizes as retrospective opinions from

3

treating physicians who saw Plaintiff beginning in 1995 to prove the onset of a disability in 1988. (*Id.* at 7–11.)

But while this Court, like the ALJ, is "sympathetic to [Plaintiff's] plight," substantial evidence supports the ALJ's conclusion that there was insufficient medical evidence to find that he had a "severe impairment that was disabling" at the relevant time. (AR 20.) While Dr. Silverman, the physician on whom Plaintiff relies most heavily, noted in 1999 that Plaintiff "likely suffered from PTSD symptoms and panic attacks prior to evaluation in our clinic" and that it was "highly likely that [Plaintiff's] somatic symptoms prior to diagnosis in our clinic were due to his anxiety disorder," this is far from a definitive diagnosis that Plaintiff suffered from disabling PTSD in 1988–89. (*See* AR 392.) Indeed, Dr. Silverman continued that he was "unable to give a definite diagnosis" to Plaintiff, because Dr. Silverman "did not know the patient prior to 1999." (*Id.*) In the Second Circuit, retrospective opinions are indeed entitled to significant weight, and a retrospective opinion alone may provide conclusive evidence for a disability "when no medical opinion in evidence contradicted one doctor's retrospective diagnosis finding a disability." *Rivera v. Sullivan*, 923 F.2d 964, 968 (2d Cir. 1991). But the key to the applicability of that doctrine is a retrospective diagnosis *finding a disability*. Here, Dr. Silverman explicitly stated there was "no diagnosis possible," (AR 392), so the ALJ's determination that Dr. Silverman's opinion does not support a finding of disability for the relevant time period was not error.[2] Further, there are several medical reports in the record from

---

[2] This also distinguishes the case here from the facts in the unpublished case *Milham v. Apfel*, No. 97-CV-230 (E.D.N.Y. Apr. 2, 1998), which Plaintiff attached to his submission. (*See* Dkt. No. 10 at 18–30.) In *Milham*, two doctors made retrospective diagnoses that the claimant there "began suffering from PTSD in 1966." (*Id.* at 26 (Op. at 9).) Here, by contrast, neither Dr. Silverman nor Mr. Boffardi diagnosed the onset of Plaintiff's PTSD as having definitively occurred before Plaintiff's date of last insured.

the 1988–89 period and earlier that do not mention a PTSD diagnosis for Plaintiff.  (*See* AR 18–20.)

The 1998 opinion letter of Pat Boffardi, a licensed social worker, suffers from the same problems.  Though that letter states that Plaintiff had been "diagnose[d] as having Chronic Post Traumatic Stress Disorder," it does not opine at all as to whether Plaintiff manifested any symptoms in 1988–89.  (AR 101.)  Plus, as the ALJ noted, that letter does not explain how Plaintiff was able to work as a truck driver until he was in an accident in 1988, notwithstanding any possible effects from PTSD at the time.  (AR 19–20.)

Plaintiff's subjective testimony regarding his experiences in 1988–89 is likewise not enough to overturn the ALJ's determination.  Rather, there is a "statutory requirement that a disability claimant must prove physical or mental impairment resulting from abnormalities demonstrable by medically acceptable clinical and laboratory techniques." *Gallagher ex rel. Gallagher v. Schweiker*, 697 F.2d 82, 84 (2d Cir. 1983) (internal quotation marks omitted).  In any event, while Plaintiff's testimony certainly describes an unfortunate circumstance, even granting significant weight to his testimony does not compel a factfinder to find that he was severely disabled and unable "to engage in any substantial gainful activity" for an extended period of time.  For instance, when asked "Were you having problems functioning on a daily basis before 1989?" Plaintiff responded, "No. . . . I was doing okay prior to 1989."  (AR 424.)  While Plaintiff later clarified this date when he was reminded that the alleged date of onset of his disability was 1988, (*see* AR 425–26), he then went on to testify that he was able to control his drinking of alcohol while he was working as a truck driver right up until his accident on November 16, 1988, (*see* AR 426 ("I was pretty straight when I was working.").)  This testimony therefore does not compel reversal of the ALJ's determination.

5

Finally, Plaintiff contends that the ALJ failed adequately to develop the record. (Pl.'s Mem. 11–13.) Magistrate Judge Yanthis also correctly found that there "are no gaps or deficiencies in the record which would trigger the ALJ's duty to seek information." (R&R 8.) Indeed, while Plaintiff contends that "[w]hen medical source notes appear to be incomplete, the Commissioner is required to re-contact the source to attempt to obtain more detailed information," (Pl.'s Mem. 13), Plaintiff does not actually state what about the records obtained from either Dr. Silverman or Mr. Boffardi is incomplete or what required additional inquiry from the ALJ. Plus, as Magistrate Judge Yanthis correctly observed, neither Dr. Silverman nor Mr. Boffardi hinted at any PTSD diagnosis for the 1988–89 period, and in fact neither of them actually saw Plaintiff until the mid 1990s at the earliest. (R&R 9.) Thus, there would have been no notes contemporaneous to the alleged date of onset of the disability to obtain, nor any notes related to a retrospective diagnosis of PTSD dating back to the relevant time period.

III. Conclusion

Accordingly, it is hereby

ORDERED that the Report and Recommendation dated February 20, 2013, is ADOPTED in its entirety. It is further

ORDERED that Plaintiff's Motion for Judgment on the Pleadings is DENIED. It is further

ORDERED that the Commissioner's Cross-Motion for Judgment on the Pleadings is GRANTED. It is further

ORDERED that the Clerk of the Court is respectfully directed to terminate the pending motion, (Dkt. No. 17), enter judgment for Defendant, and close this case.

SO ORDERED.

Dated: September 27, 2013
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE